**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **VIRTUAL CREATIVE ARTISTS, LLC,**<br><br>Plaintiff,<br>v.<br><br>**BARON APP, INC.,**<br><br>Defendant. | C.A. No. 1:24-cv-08394<br><br>**JURY TRIAL DEMANDED**<br><br>**PATENT CASE** |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Virtual Creative Artists, LLC files this Original Complaint for Patent Infringement against Baron App, Inc. and would respectfully show the Court as follows:

### I.  THE PARTIES

1.      Plaintiff Virtual Creative Artists, LLC ("VCA" or "Plaintiff") is a Delaware limited liability company, having business address at 338 Gracious Way, Henderson, NV  89011.

2.      On information and belief, Defendant Baron App, Inc. ("Cameo" or "Defendant") is a limited liability company organized and existing under the laws of Delaware. Defendant has a place of business at 320 N. Elizabeth St, 1st Floor, Chicago, IL 60607. Defendant has a registered agent at C T Corporation System, 208 So LaSalle St, Suite 814, Chicago, IL 60604.

### II.  JURISDICTION AND VENUE

3.      This action arises under the patent laws of the United States, Title 35 of the United States Code.  This Court has subject matter jurisdiction of such action under 28 U.S.C. §§ 1331 and 1338(a).

4.      On information and belief, Defendant is subject to this Court's specific and general personal jurisdiction, pursuant to due process and the Illinois Long-Arm Statute, due at least to its

1

business in this forum, including at least a portion of the infringements alleged herein at 320 N. Elizabeth St, 1st Floor, Chicago, IL 60607.

5.     Without limitation, on information and belief, within this state, Defendant has used the patented inventions thereby committing, and continuing to commit, acts of patent infringement alleged herein.  In addition, on information and belief, Defendant has derived revenues from its infringing acts occurring within Illinois.  Further, on information and belief, Defendant is subject to the Court's general jurisdiction, including from regularly doing or soliciting business, engaging in other persistent courses of conduct, and deriving substantial revenue from goods and services provided to persons or entities in Illinois.  Further, on information and belief, Defendant is subject to the Court's personal jurisdiction at least due to its sale of products and/or services within Illinois. Defendant has committed such purposeful acts and/or transactions in Illinois such that it reasonably should know and expect that it could be haled into this Court as a consequence of such activity.

6.     Venue is proper in this district under 28 U.S.C. § 1400(b). On information and belief, Defendant has a businesses address in this District at 320 N. Elizabeth St, 1st Floor, Chicago, IL 60607.  On information and belief, from and within this District Defendant has committed at least a portion of the infringements at issue in this case.

7.      For these reasons, personal jurisdiction exists and venue is proper in this District under 28 U.S.C. § 1400(b).

### III.   COUNT I
### (PATENT INFRINGEMENT OF UNITED STATES PATENT NO. 9,501,480)

8.     Plaintiff incorporates the above paragraphs herein by reference.

9.     On November 22, 2016, United States Patent No. 9,501,480 ("the '480 Patent") was duly and legally issued by the United States Patent and Trademark Office.  The '480 Patent is

titled "Revenue-Generating Electronic Multi-Media Exchange and Process of Operating Same." A true and correct copy of the '480 Patent is attached hereto as Exhibit A and incorporated herein by reference.

10.     VCA is the assignee of all right, title, and interest in the '480 Patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '480 Patent. Accordingly, VCA possesses the exclusive right and standing to prosecute the present action for infringement of the '480 Patent by Defendant.

11.     The invention relates to the field of creating and distributing media content, in particular, creating media content based upon submissions received on an electronic media exchange. At the time of the original invention in 1998, there was an Internet-centric problem that required a technical solution—how to develop a computer system that would allow remote contributors of electronic content to share and collaborate their content to develop new media content. The claimed invention, which predates modern crowdsourcing solutions, offers a unique, unconventional, and specially configured combination of "subsystems" in which to address the Internet-centric problem.

12.     As set forth in the claims, the claimed invention has a collection of unconventional and particularly configured subsystems, including:

- "an electronic media submissions server subsystem,"

- "an electronic multimedia creator server subsystem,"

- "an electronic release subsystem,"

- "an electronic voting subsystem," and

- their corresponding specialized databases.

13.     Each of these subsystems are configured in a very specific (and not generic), unconventional and non-routine manner to offer the novel and non-obvious claimed invention.

For example, claim 1 requires an "electronic media submissions database," which is a subsystem that receives media submissions from Internet users. This is not a generic database but rather a scalable database that must be able to receive, store, and manage multiple petabytes of multimedia data received from users all over the world. This is one of the many specialized databases required in the claim. In fact, the specification discloses the use of a sophisticated database management system known in the art at the time that was capable of handling data at this level, Oracle7. This type of database management system cannot operate on a generic computing system but rather requires specialized hardware and software.

14.     As another example, the claim requires a specifically configured "electronic media submission server subsystem." This subsystem is defined as specifically having:

- "one or more data processing apparatus,"

- "an electronic media submission database stored on a non-transitory medium," and

- "a submissions electronic interface."

The "submissions electronic interface" is further specifically "configured" [1] "to receive electronic media submissions from a plurality of submitters over a public network, and [2] store the electronic media submissions in the electronic media submission database." Further, "the electronic media submissions database" in this subsystem is further required to "store[] [1] data identifying the submitter and [2] data indicating content for each electronic media submission." Collectively, the level of detail included in this very particular, well-defined, and unconventional subsystem makes clear that the claims include substantially more than the alleged abstract idea or merely performing an alleged abstract idea on a computer.

15.     Similarly, the claim also requires a separate specifically configured "an electronic multimedia creator server subsystem." The claim specifically defines how this second subsystem

4

interacts with other components including being "operatively coupled to the electronic media submissions server subsystem." The claim also specifically defines this subsystem as "having":

- "one or more data processing apparatus" and
- "an electronic creator multimedia database stored on a non-transitory medium."

16.     This subsystem is also specifically "configured [1] to select and [2] retrieve a plurality of electronic media submissions from the electronic media submissions database using an electronic content filter located on the electronic multimedia creator server." The "filter" also includes a very specific algorithm of "being based at least in part on at least one of the one or more user attributes to develop multimedia content to be electronically available for viewing on user devices." Even more detail is provided by requiring "the identification of the submitter [be] maintained with each selected and retrieved submission within the multimedia content." Here again, collectively, the level of detail included in this very particular and well-defined and unconventional subsystem makes clear that the claims include substantially more than an alleged abstract idea or merely performing an alleged abstract idea on a computer.

17.     The claim also includes "an electronic release subsystem," which is well defined and not conventional or routine. The claim defines how this subsystem is "operatively coupled to the electronic multimedia creator server subsystem." The claim also defines the components of this subsystem as having "one or more data processing apparatus" and being particularly "configured to make the multimedia content electronically available for viewing on one of more user devices." These details, collectively, also make this very particular and well-defined and unconventional subsystem substantially more than an abstract idea or performing an abstract idea on a computer.

18. The claim also requires "an electronic voting subsystem," which is well-defined, specific, and unconventional. This claimed subsystem has "one or more data processing apparatus" and is specifically "configured to enable a user to electronic vote for or electronically rate an electronically available multimedia content or an electronic media submission within a respective electronically available multimedia content."

19. Claim 1 is a specific and discrete implementation. For example, the claim requires an "electronic content filter" located at the server, remote from end users, and customizable based on user attributes. As another example, the "electronic voting subsystem" at the time of the invention was novel and inventive and added sufficient inventive contributions to avoid a risk of preempting creating and distributing media content. It is possible to create and distribute media content without ever having to include a "voting" subsystem on what components should be included in such media content. The detailed configuration "to enable a user to vote for or electronically rate an electronically available multimedia content or an electronic media submission within a respective electronically available multimedia content" has the level of particularity that avoids any risk of preemption.

20. Furthermore, the very particular and specifically configured "electronic media creator subsystem" not only provides a detailed and unique physical structure and interrelationship with other claimed components, but also includes a very specific configuration that is not conventional or routine. The claims make clear the interrelationship of the "electronic multimedia creator server subsystem" with respect to "the electronic media submission server subsystem" which must be "operatively coupled" thereto. The claims also provide detail on how the "electronic media creator subsystem" is "configured" "to select and retrieve a plurality of electronic media submissions from the electronic media submission database using an electronic

6

filter." They also provide detail on how the "electronic filter" is "based at least in part on at least one of the one or more user attributes" and specifies that "the identification of the submitter is maintained with each selected and retrieved submission within the multimedia content."

21.     These arguments overcame a patent eligibility rejection under 35 U.S.C. §101 of the claim at issue during the prosecution of the '480 patent before the United States Patents and Trademark Office.

22.     **Direct Infringement.** Upon information and belief, Defendant has been directly infringing claim 1 of the '480 Patent in Illinois, and elsewhere in the United States, by employing a computer-based system using https://www.cameo.com/ ("Accused Instrumentality") (*e.g.*, https://www.cameo.com/). Cameo uses a computer-based system for its Accused Instrumentality to enable user-celebrities to create personalized Celebrity profiles containing multimedia content and publish multimedia content in the form of image content, video content and textual content. Celebrity profiles may showcase information about the celebrity and prior cameo videos of the celebrity, each of which include multimedia content in the form of image content, video content and textual content. Celebrity profiles containing multimedia content may be shown to other users based on, *inter alia*, user preferences and attributes of the user-celebrity or the services offered. Cameo, during the relevant time period, took advantage of multiple cloud server providers for Accused Instrumentality, as discussed above, as well as scalability within its cloud server providers, employing separate server subsystems for all its meaningfully different functions. Cameo uses, and has used during the relevant time period, numerous different networks and providers for, *inter alia*, content management systems, web servers, web hosting, data centers, proxy certificates, SSL certificates, traffic analysis, advertising, and tagging, thereby using

separate server subsystems for all its meaningfully different functions, such as those indicated below.



**Merril Hoge's booking rate on the Cameo app.** Cameo/Reece Rogers/Insider

(*E.g.*, https://www.businessinsider.com/guides/gifts/cameo-review-personalized-celebrity-videos).



(*E.g.*, https://www.youtube.com/watch?v=SEU5E2PfE_A).



(*E.g.*, https://www.youtube.com/watch?v=fqAGFqA-1p4).



(*E.g.*, https://www.youtube.com/watch?v=fqAGFqA-1p4).



(*E.g.*, https://www.youtube.com/watch?v=fqAGFqA-1p4).



(*E.g.,* https://www.youtube.com/watch?v=fqAGFqA-1p4).

23.     The Accused Instrumentality includes an electronic media submissions server subsystem, having one or more data processing apparatus and an electronic media submissions database stored on a non-transitory medium in order to process and store received submissions from a plurality of users (such as user-celebrities), for example content pertaining to respective celebrity profiles submitted by users on Accused Instrumentality, as discussed and shown for example in connection with the above discussion. For example, the submissions pertaining to creating a celebrity profile may include, *e.g.,* photo, video and/or textual content. Individual users may also submit a request for a celebrity to create a cameo video.  The submissions are provided to Accused Instrumentality via a submissions electronic interface, *e.g.,* a web-based content portal,

accessible for example by logging in and selecting options to upload such content or import content, configured to receive such electronic media, from a plurality of submitters over a public network (*e.g.,* the Internet) and stored, via an uploading process, in said electronic media submissions database for use in distribution to other users of Accused Instrumentality.



(*E.g.,* https://medium.com/@AppGrooves/how-to-make-a-cameo-creator-profile-that-actually-books-fc1c78a96712).



(*E.g.*, https://web.archive.org/web/20191220124849/https://www.cameo.com/enroll).



(*E.g.*, https://www.youtube.com/watch?v=fqAGFqA-1p4).



(*E.g.,* https://www.businessinsider.com/guides/gifts/cameo-review-personalized-celebrity-videos).

24. The electronic media submissions database of Accused Instrumentality used by Cameo which stores the submissions further stores data identifying the submitter and data indicating content for each electronic media submission. As shown below, data identifying the

user (submitter) includes, *e.g.,* a name. Data indicating content for each electronic media submission includes photo, audio and/or textual content.



(*E.g.,* https://www.youtube.com/watch?v=mVFfBlPN6Wg).



(*E.g.*, https://www.youtube.com/watch?v=mVFfBlPN6Wg).



**Merril Hoge's booking rate on the Cameo app.** Cameo/Reece Rogers/Insider

(*E.g.,* https://www.businessinsider.com/guides/gifts/cameo-review-personalized-celebrity-videos).

25.     Individual users can create a celebrity profile and post celebrity profiles on Cameo's Accused Instrumentality, which are stored in a user database stored in memory. Celebrity profiles are available to other users through Accused Instrumentality, for example as discussed

above. The user attributes of users who create a profile and/or post celebrity profiles include, *e.g.*, the category of the celebrity such as "Actors," "Athletes," Musicians" and the like, and the like as shown for example below.



(*E.g.*, https://www.youtube.com/watch?v=pbbCdr4UtRs).



(*E.g.,* https://www.youtube.com/watch?v=fqAGFqA-1p4).

26.     The Accused Instrumentality employs an electronic multimedia creator server subsystem operatively coupled to the electronic media submissions server subsystem, necessarily having one or more data processing apparatus in order to manage content, and an electronic creator multimedia database stored on a non-transitory medium, configured to select and retrieve a plurality of electronic media submissions (*e.g.,* celebrity profiles) from the electronic media submissions database using an electronic content filter located on the electronic multimedia creator server. For example with respect to a celebrity listing, as can be seen below, such electronic content filter as is used by Cameo is based at least in part on at least one of the one or more user attributes, (*e.g.,* based on, *inter alia*, the category of the celebrity such as "Actors," "Athletes," Musicians" and the like) which in turn affect which electronic media submissions, *e.g.,* the

celebrity profile, appear to the user as shown and discussed for example below. Cameo uses function-specific subsystems, for example as discussed below.



(*E.g.*, https://www.youtube.com/watch?v=mVFfBlPN6Wg).



(*E.g.,* https://www.youtube.com/watch?v=mVFfBlPN6Wg).

27.     Such electronic content filter is used by Accused Instrumentality to develop multimedia content (*e.g.,* the profiles and/or various content as discussed above) associated with the user (submitter) to be electronically available for viewing on user devices (*e.g.,* devices such as computers and smart phones incorporating browsers or apps) wherein the identification of the submitter (*e.g.,* a user's name) is maintained with each selected and retrieved submission within the multimedia content, for example as shown below.



(*E.g.,* https://www.youtube.com/watch?v=mVFfBlPN6Wg).

28.     The Accused Instrumentality employs an electronic release subsystem operatively coupled to the electronic multimedia creator server subsystem, necessarily having one or more data processing apparatus in order to serve multimedia profile and/or celebrity profiles with associated photo, and textual content to users, configured to make the multimedia content electronically available for viewing on one or more user devices. For example, as shown below, multimedia content associated with a celebrity profile is provided on various user devices (*e.g.,* a computer or other device with a web browser or app) in response to a user logging in to Accused Instrumentality. Cameo uses function-specific subsystems, for example as discussed below.



**Merril Hoge's booking rate on the Cameo app.** Cameo/Reece Rogers/Insider

(*E.g.*, https://www.businessinsider.com/guides/gifts/cameo-review-personalized-celebrity-videos).



(*E.g.*, https://www.youtube.com/watch?v=SEU5E2PfE_A).



(*E.g.*, https://www.youtube.com/watch?v=fqAGFqA-1p4).



(*E.g.*, https://www.youtube.com/watch?v=fqAGFqA-1p4).



(*E.g.*, https://www.youtube.com/watch?v=fqAGFqA-1p4).



(*E.g.,* https://www.youtube.com/watch?v=fqAGFqA-1p4).

29. The Accused Instrumentality employs an electronic voting subsystem, necessarily having one or more data processing apparatus in order to track voting or electronic rating, configured to enable a user to electronically vote for or rate (*e.g.,* by the user's choices with respect to a selection of a Heart Icon) an electronically available multimedia content (*e.g.,* a celebrity listing provided by an user-celebrity submitter, such as accompanying profile or cameo video). Cameo uses function-specific subsystems, for example as discussed below.



(*E.g.*, https://www.youtube.com/watch?v=fqAGFqA-1p4).



(*E.g.*, https://www.youtube.com/watch?v=fqAGFqA-1p4).

30.     Plaintiff has been damaged as a result of Defendant's infringing conduct. Defendant is thus liable to Plaintiff for damages in an amount that adequately compensates Plaintiff for such Defendant's infringement of the '480 Patent, *i.e.*, in an amount that by law cannot be less than would constitute a reasonable royalty for the use of the patented technology, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

31.     To the extent marking is required, VCA has complied with all marking requirements.

## IV.   COUNT II
## (PATENT INFRINGEMENT OF UNITED STATES PATENT NO. 9,477,665)

32.     Plaintiff incorporates the above paragraphs herein by reference.

33.     On October 25, 2016, United States Patent No. 9,477,665 ("the '665 Patent") was duly and legally issued by the United States Patent and Trademark Office.  The '665 Patent is titled "Revenue-Generating Electronic Multi-Media Exchange and Process of Operating Same."  A true and correct copy of the '665 Patent is attached hereto as Exhibit B and incorporated herein by reference.

34.     VCA is the assignee of all right, title, and interest in the '665 Patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '665 Patent.  Accordingly, VCA possesses the exclusive right and standing to prosecute the present action for infringement of the '665 Patent by Defendant.

35.     The application leading to the '665 patent was filed November 16, 2012, which was a continuation of application no. 11/978,781, which issued as United States Patent No. 8,340,994, which was a continuation of application no. 09/565,438 which issued as United States Patent No. 7,308,413.  (Ex. B at cover).  The '665 patent was first assigned to Virtual Creative Artists, LLC. (*Id.*).

36.     The '665 Patent shares the identical specification as the '480 patent and therefore VCA incorporates the background and discussion of the invention in Paragraphs 11-18.  Furthermore claim 1 involves a system for generating multimedia content.  The claim requires, among other things, electronically generating a multimedia file from the retrieved electronic media Submissions in accordance with a selected digital format, wherein the identification of the submitter is maintained with each retrieved submission within the multimedia file.  The claim requires electronically transmitting the multimedia file to a plurality of publicly accessible webservers to be electronically available for viewing on one or more user devices over a public network via a web-browser and.  This allows electronically transmitting data indicating votes or

34

rating of multimedia content in a much quicker and easier fashion based on specific user criteria. There is nothing abstract about this very particular, unconventional, and non-routine system for the generation of multimedia content as specifically claimed and there is no risk of preempting creating and distribution contention generally, or even within the context of the Internet.

37.     The invention is a highly technical electronic process that cannot be achieved with the human mind and is instead rooted in computer technology, including the steps of:

- "electronically retrieving a plurality of electronic media submissions,"

- "electronically generating a multimedia file from the retrieved electronic media submissions in accordance with a selected digital format,"

- "electronically transmitting the multimedia file to a plurality of publicly accessible webservers to be electronically available for viewing on one or more user devices over a public network via a web-browser," and

- "providing a web-based graphical user interface that enables a user to electronically transmit data indicating a vote or rating for an electronically available multimedia content or an electronic media Submission within a respective electronically available multimedia content."

38.     Each of these subsystems are configured in a very specific (and not generic, unconventional and non-routine manner to offer the novel and non-obvious approach claimed invention.  For example, claim 1 requires an "electronic media submissions database," which is a subsystem that receives media submissions from Internet users.  This is not a generic database but rather a scalable database that must be able to receive, store, and manage multiple petabytes of multimedia data received from users all over the world.  This is one of the many specialized databased required in the claim.  In fact, the specification discloses the use of a sophisticated database management system known in the art at the time that was capable of handling data at this level, Oracle7.  This type of database management system cannot operate on a generic computing system but rather requires specialized hardware and software.

39.     The claim also provides details to explain how each step operates.  For example, the claim requires "electronically retrieving a plurality of electronic media submissions from an electronic media submissions database using an electronic content filter located on one or more data processing apparatus."  Further, "the electronic media submissions database" in this step is further required to "store[] [1] data identifying the submitter and [2] data indicating content for each electronic media submission."  The step further requires and "electronic content filter."  The "filter" also includes a very specific algorithm of "being based at least in part on at least one of the one or more user attributes."

40.     The claims also require an "electronically generating a multimedia file from the retrieved electronic media submissions in accordance with a selected digital format." Manipulation of multimedia data in accordance with a selected digital format is far from generic and was not routine or conventional at the time of the invention.  Further, this step requires that the "electronic media submissions database" "stores data identifying the submitter" and the "the identification of the submitter is maintained with each retrieved submission within the multimedia file."

41.     The claims also require "providing a web-based graphical user interface that enables a user to electronically transmit data indicating a vote or rating for an electronically available multimedia content or an electronic media Submission within a respective electronically available multimedia content," which is a well-defined, specific, and unconventional feature.  By including this additional voting/rating feature, the claims avoid any risk of preempting the creation and distribution of content.

42.     The claim also has inventive concepts.  For example, the claim requires that the filtering tool be at a specific location, remote from the end-users, with customizable filtering features specific to each end user.  The "electronic content filter" is located at the server, remote

from the end user, and customizable based on user attributes. The "electron voting" step at the time of the invention was also novel, inventive, and added sufficient inventive contributions to avoid a risk of preempting the creation and distribution of media content. It is clearly possible to create and distribute media content without every having to include a "voting" subsystem on what components should be included in such media content.

43.      These arguments overcame a patent eligibility rejection under 35 U.S.C. §101 of the claim at issue during the prosecution of the '665 patent before the United States Patent and Trademark Office.

44.      **Direct Infringement.** Upon information and belief, Defendant has been directly infringing claim 1 of the '665 Patent in Illinois, and elsewhere in the United States, by employing a computer-based system using https://www.cameo.com/ ("Accused Instrumentality") (*e.g.,* https://www.cameo.com/).

45.      Cameo uses a computer-based system for its Accused Instrumentality, to enable user-celebrities to create personalized Celebrity profiles containing multimedia content and publish multimedia content in the form of celebrity profiles containing associated image content, video content and textual content. Celebrity profiles may showcase information about the celebrity and prior cameo videos of the celebrity, each of which include multimedia content in the form of image content, video content and textual content. Celebrity profiles containing multimedia content may be shown to other users based on, *inter alia*, user preferences and attributes of the user-celebrity or the services offered. This system makes use of one or more data processing apparatus, and a computer readable medium coupled to the one or more data processing apparatus having instructions stored thereon which, when executed by the one or more data processing apparatus, cause the one or more data processing apparatus to perform an electronic method comprising the

functions as further discussed below. Cameo, during the relevant time period, took advantage of multiple cloud server providers for the Accused Instrumentality, as discussed above, as well as scalability within its cloud server providers, employing separate server subsystems for all its meaningfully different functions. Cameo uses, and has used during the relevant time period, numerous different networks and providers for, *inter alia*, content management systems, web servers, web hosting, data centers, proxy certificates, SSL certificates, traffic analysis, advertising, and tagging, thereby using separate server subsystems for all its meaningfully different functions, such as those indicated below.



**Merril Hoge's booking rate on the Cameo app.** Cameo/Reece Rogers/Insider

(*E.g.,* https://www.businessinsider.com/guides/gifts/cameo-review-personalized-celebrity-videos).



(*E.g.*, https://www.youtube.com/watch?v=SEU5E2PfE_A).



(*E.g.*, https://www.youtube.com/watch?v=fqAGFqA-1p4).



(*E.g.*, https://www.youtube.com/watch?v=fqAGFqA-1p4).



(*E.g.*, https://www.youtube.com/watch?v=fqAGFqA-1p4).



(*E.g.,* https://www.youtube.com/watch?v=fqAGFqA-1p4).

46.     The Accused Instrumentality electronically retrieves a plurality of electronic media submissions from an electronic media submissions database on a non-transitory medium, for example multimedia content pertaining to creating a celerity profile on the Accused Instrumentality, as well as multimedia content to be displayed on the user's profile or curated feed of other users, for example as discussed and shown above in connection with the above discussion. Individual users can create a celebrity profile and post celebrity profiles on Cameo's Accused Instrumentality, which are stored in a user database stored in memory. Celebrity profiles are available to other users through the Accused Instrumentality, for example as discussed above. The user attributes of users who create a profile and/or post celebrity profiles include, *e.g.,* the category

of the celebrity such as "Actors," "Athletes," Musicians" and the like, and the like as shown for example below. The Accused Instrumentality employs an electronic multimedia creator server subsystem operatively coupled to the electronic media submissions server subsystem, necessarily having one or more data processing apparatus in order to manage content, and an electronic creator multimedia database stored on a non-transitory medium, configured to select and retrieve a plurality of electronic media submissions (*e.g.,* celebrity profiles) from the electronic media submissions database using an electronic content filter located on the electronic multimedia creator server. For example with respect to a celerity profile, as can be seen below, such electronic content filter as is used by Cameo is based at least in part on at least one of the one or more user attributes, (*e.g.,* based on, *inter alia*, the category of the celebrity such as "Actors," "Athletes," Musicians" and the like) which in turn affect which electronic media submissions, *e.g.,* the celebrity profile, appear to the user as shown and discussed for example below. Cameo uses function-specific subsystems, for example as discussed below.



(*E.g.,* https://www.youtube.com/watch?v=pbbCdr4UtRs).



(*E.g.*, https://www.youtube.com/watch?v=fqAGFqA-1p4).



(*E.g.*, https://www.youtube.com/watch?v=mVFfBlPN6Wg).



(*E.g.,* https://www.youtube.com/watch?v=mVFfBlPN6Wg).

47.     The Accused Instrumentality includes an electronic media submissions server subsystem, having one or more data processing apparatus and an electronic media submissions database stored on a non-transitory medium in order to process and store received submissions from a plurality of users (such as user-celebrities), for example content pertaining to respective celebrity profiles submitted by users on the Accused Instrumentality, as discussed and shown for example in connection with the above discussion. For example, the submissions pertaining to creating a celebrity profile may include, *e.g.,* photo, video and/or textual content. Individual users may also submit a request for a celebrity to create a cameo video. The submissions are provided to the Accused Instrumentality via a submissions electronic interface, *e.g.,* a web-based content

portal, accessible for example by logging in and selecting options to upload such content or import content, configured to receive such electronic media, from a plurality of submitters over a public network (*e.g.,* the Internet) and stored, via an uploading process, in said electronic media submissions database for use in distribution to other users of the Accused Instrumentality.



(*E.g.,* https://medium.com/@AppGrooves/how-to-make-a-cameo-creator-profile-that-actually-books-fc1c78a96712).



(*E.g.*, https://web.archive.org/web/20191220124849/https://www.cameo.com/enroll).



(*E.g.*, https://www.youtube.com/watch?v=fqAGFqA-1p4).



(*E.g.*, https://www.businessinsider.com/guides/gifts/cameo-review-personalized-celebrity-videos).

48.     The electronic media submissions database of the Accused Instrumentality used by Cameo which stores the submissions further stores data identifying the submitter and data indicating content for each electronic media submission. As shown below, data identifying the

user (submitter) includes, *e.g.,* a name. Data indicating content for each electronic media submission includes photo, audio and/or textual content.



(*E.g.,* https://www.youtube.com/watch?v=mVFfBlPN6Wg).



(*E.g.*, https://www.youtube.com/watch?v=mVFfBlPN6Wg).



**Merril Hoge's booking rate on the Cameo app.** Cameo/Reece Rogers/Insider

(*E.g.,* https://www.businessinsider.com/guides/gifts/cameo-review-personalized-celebrity-videos).

49. The Accused Instrumentality electronically generates multimedia files from the retrieved electronic media submissions, in accordance with a selected digital format (*e.g.,* a digital format compatible with a selected digital format compatible with the particular device such as a

computers or smart phone incorporating one or more browsers or apps), and the identification of the submitter is maintained with each retrieved submission within the multimedia file. As shown below, data identifying the user-celebrity submitter includes, *e.g.,* a name identifying the user. For example, below are examples of such multimedia files being displayed within a user's browser or app, on a user device, where the identification of the submitter (*e.g.,* the name of the user-celebrity submitter of the celebrity profiles and/or various content as discussed above) is maintained with each retrieved submission within the multimedia file having associated multimedia content, for example as shown below.



**Merril Hoge's booking rate on the Cameo app.** Cameo/Reece Rogers/Insider

(*E.g.*, https://www.businessinsider.com/guides/gifts/cameo-review-personalized-celebrity-videos).

50. The Accused Instrumentality employs an electronic release subsystem operatively coupled to the electronic multimedia creator server subsystem, necessarily having one or more data processing apparatus in order to serve multimedia profile and/or celebrity profiles with associated photo, and textual content to users, configured to make the multimedia content electronically available for viewing on one or more user devices. For example, as shown below, multimedia content associated with a celebrity profile is provided on various user devices (*e.g.,* a computer or other device with a web browser or app) in response to a user logging in to the Accused Instrumentality. Cameo uses function-specific subsystems, for example as discussed below.



**Merril Hoge's booking rate on the Cameo app.** Cameo/Reece Rogers/Insider

(*E.g.*,    https://www.businessinsider.com/guides/gifts/cameo-review-personalized-celebrity-videos).



(*E.g.*, https://www.youtube.com/watch?v=SEU5E2PfE_A).



(*E.g.*, https://www.youtube.com/watch?v=fqAGFqA-1p4).



(*E.g.*, https://www.youtube.com/watch?v=fqAGFqA-1p4).



(*E.g.*, https://www.youtube.com/watch?v=fqAGFqA-1p4).



(*E.g.,* https://www.youtube.com/watch?v=fqAGFqA-1p4).

51. The Accused Instrumentality employs an electronic voting subsystem, necessarily having one or more data processing apparatus in order to track voting or electronic rating, configured to enable a user to electronically vote for or rate (*e.g.,* by the user's choices with respect to a selection of a Heart Icon) an electronically available multimedia content (*e.g.,* a listing provided by an user-celebrity submitter, such as accompanying profile or cameo video). Cameo uses function-specific subsystems, for example as discussed below.



(*E.g.*, https://www.youtube.com/watch?v=fqAGFqA-1p4).



(*E.g.,* https://www.youtube.com/watch?v=fqAGFqA-1p4).

52.     Plaintiff has been damaged as a result of Defendant's infringing conduct. Defendant is thus liable to Plaintiff for damages in an amount that adequately compensates Plaintiff for such Defendant's infringement of the '665 Patent, *i.e.*, in an amount that by law cannot be less than would constitute a reasonable royalty for the use of the patented technology, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

53.     To the extent marking is required, VCA has complied with all marking requirements.

## V.  JURY DEMAND

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

## VI.  **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court find in its favor and against

Defendant, and that the Court grant Plaintiff the following relief:

a.  Judgment that one or more claims of United States Patent No. 9,501,480 have been infringed, either literally and/or under the doctrine of equivalents, by Defendant;

b.  Judgment that one or more claims of United States Patent No. 9,477,665 have been infringed, either literally and/or under the doctrine of equivalents, by Defendant;

c.  Judgment that Defendant account for and pay to Plaintiff all damages to and costs incurred by Plaintiff because of Defendant's infringing activities and other conduct complained of herein, and an accounting of all infringements and damages not presented at trial;

d.  That Plaintiff be granted pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein; and

e.  That Plaintiff be granted such other and further relief as the Court may deem just and proper under the circumstances.

September 13, 2024                    Respectfully Submitted,

*/s/Steven G. Kalberg*
David R. Bennett (IL Bar No.: 6244214)
Steven G. Kalberg (IL Bar No.: 6336131)
P.O. Box 14184
Chicago, Illinois 60614-0184
Telephone: (312) 291-1667
dbennett@directionip.com
Telephone: (847) 508-1294
skalberg@directionip.com

*Attorneys for Plaintiff*
*Virtual Creative Artists, LLC*